IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

REPSOL RENEWABLES DEVELOPMENT
COMPANY, LLC, and
JICARILLA SOLAR 1, LLC,

    Plaintiffs,

v.                                                                                                   Civ. Case No. 1:24-296 KRS/JMR

TRISURA INSURANCE COMPANY,

    Defendant,

## ORDER GRANTING MOTION TO STRIKE JURY DEMAND
## AND DENYING WITHOUT PREJUDICE MOTION TO STAY

THIS MATTER is before the Court on Defendant Trisura Insurance Company's Motion to Strike Jury Demand and Motion to Stay This Action Pending Contractually-Required Mediation, (Doc. 6), filed April 1, 2024.  Plaintiffs filed a response to the Motion on April 15, 2024 and Defendant filed a reply on April 29, 2024.  (Docs. 15 and 19).  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct dispositive proceedings in this matter and to enter a final judgment.  (Docs. 16, 17, 18).  Having considered the parties' briefing, record of the case, and relevant law, the Court grants the Motion to Strike Jury Demand and denies without prejudice the Motion to Stay.

This case arises from the construction of a photovoltaic solar power facility in Rio Arriba County, New Mexico.  (Doc. 1-1) at 1-2.  In February 2022, Plaintiffs contracted with Bridgelink Engineering ("Bridgelink") for the design, engineering, procurement, and construction of the project in exchange for Plaintiffs' payment to Bridgelink of $24,465,404.00.  *Id.*  As part of the contract between Plaintiffs and Bridgelink (hereinafter the "Project Contract"), Bridgelink was required to furnish a performance bond.  Defendant issued the performance bond naming

Bridgelink as contractor and Plaintiffs as bond owner/obligee. *Id.* at 2; 19-22 (hereinafter "Surety Bond").[1] Plaintiffs allege the Surety Bond obligates Defendant to guarantee performance of the Project Contract in the event of a default by Bridgelink. *Id.* at 7.

Plaintiffs state they terminated the Performance Contract when Bridgelink defaulted, and Plaintiffs then made a demand to Defendant for completion of the Surety Bond. *Id.* at 2-3; 8-9. Plaintiffs selected a new contractor (Overland Contracting, Inc.) to complete the remaining work under the Project Contract. *Id.* at 10. Plaintiffs had to retain additional suppliers and contractors to complete the Project, and they state their costs to complete the Project will exceed $51 million. *Id.* at 11-12. Plaintiffs allege that after a year of providing documentation to Defendant, on November 9, 2023 Defendant agreed to a partial settlement under which it made a payment of $11,539,213.79 to Plaintiffs without prejudice to Plaintiffs' right to seek the remaining balance of the bond, i.e., $12,926,190.21. *Id.* at 12. Unable to settle the remaining balance of the bond, Plaintiffs bring the following claims against Defendant: Breach of Contract (for breach of the Surety Bond), Violation of the New Mexico Insurance Code, and Common Law Insurance Bad Faith. *Id.* at 13-16. Defendant now moves to strike the jury demand made by Plaintiffs in their Complaint on the basis that the Project Contract between Plaintiffs and Bridgelink contains a jury trial waiver. Defendant also moves to stay this case pending completion of the mediation process set forth in the Project Contract.

---

[1] The Project Contract was originally entered into by Plaintiff Jicarilla Solar and Bridgelink. In March 2022, Repsol Renewables acquired Jicarilla Solar, and the Project Contract and Surety Bond were amended to replace Repsol Renewables in place of Jicarilla Solar. *See* (Doc. 1-1) at 30; (Doc. 6) at 2, n.1. For purposes of this Memorandum Opinion and Order, the Court refers to Plaintiffs Jicarilla Solar and Repsol Renewables as "Plaintiffs," except where specifically indicated.

2

1. **Motion to Strike Jury Demand**

Defendant asks the Court to strike Plaintiffs' jury demand because Plaintiffs waived their right to a jury trial in the Project Contract, the Project Contract is incorporated by reference into the Surety Bond, and Defendant "is entitled to stand upon the jury waiver incorporated into its Bond." (Doc. 5) at 4-6. Plaintiffs respond that Defendant improperly conflates the Project Contract and the Surety Bond and that, "[a]lthough the bond acts as a security guaranteeing Bridgelink's completion of its scope of work under the [Project] Contract, the two contracts are distinct." (Doc. 15) at 2. Plaintiffs contend the contracts have different parties, serve different purposes, and impose different obligations, preconditions, limitations, and performance requirements, and the instant suit is not seeking to recover for breaches of the Project Contract. *Id.* at 2, 7-9. Plaintiffs further argue the Surety Bond's incorporation of the Project Contract "does not incorporate all the contractual provisions of the [Project] Contract." *Id.* at 6-7. Finally, Plaintiffs assert that Defendant cannot raise Bridgelink's jury waiver because waiver is not a defense to liability. *Id.* at 10-11. In reply, Defendant maintains the jury waiver was incorporated by the Surety Bond and that this litigation falls squarely within the broad scope of the jury waiver. (Doc. 19) at 2-8.

"The right of trial by jury as declared by the Seventh Amendment to the Constitution—or as provided by a federal statute—is preserved to the parties inviolate." Fed. R. Civ. P. 38. The right to a jury trial in the federal courts is governed by federal law. *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837 (10th Cir. 1988) (citing *Simler v. Conner*, 372 U.S. 221, 221-22 (1963) (per curiam)). Parties may contract to waive their right to a jury trial, and such waivers are neither illegal nor contrary to public policy if they are knowing and voluntary. *Id.; see also Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992); *McCarthy v. Wynne*, 126 F.2d 620, 623 (10th

Cir. 1942), cert. denied, 317 U.S. 640 (1942).  To determine if a jury waiver was knowing and voluntary, courts consider: "(1) whether there was a gross disparity in bargaining power between the parties; (2) the business or professional experience of the party opposing the waiver; (3) whether the opposing party had an opportunity to negotiate contract terms; and (4) whether the clause containing the waiver was inconspicuous." *Romero v. TitleMax of New Mexico, Inc.*, 2020 WL 5076081, at *1 (D.N.M.) (citation omitted).

Here, the Project Contract entered into by Plaintiffs and Bridgelink contains a Jury Trial Waiver clause stating: "EACH PARTY WAIVES ITS RESPECTIVE RIGHT TO ANY JURY TRIAL WITH RESPECT TO ANY LITIGATION ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT."  (Doc. 6) at 11 (all capital letters in contract).  The jury waiver is prominent, and Plaintiffs do not assert any disparity in bargaining power between the parties or lack of business or professional experience.  Accordingly, the Court concludes that Plaintiffs agreed to the waiver knowingly and voluntarily.

Regardless of the viability of the jury waiver between Plaintiffs and Bridgelink, Plaintiffs argue the waiver was not incorporated into the Surety Bond and cannot be asserted by Defendant.  (Doc. 15) at 6-11.  The Surety Bond is a three-party contract between: (1) Plaintiffs as the Owner/Obligee; (2) Bridgelink as the Contractor; and (3) Defendant as the Surety.  (Doc. 1-1) at 20.  The Surety Bond states: "The Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference."  *Id.*  Plaintiffs raise three arguments as to why the jury waiver in the Project Contract was not incorporated into the Surety Bond and cannot be asserted by Defendants.

4

First, Plaintiffs contend the Surety Bond only incorporated the Project Contract "for the performance of" the Project Contract and did not incorporate the Project Contract in full.  (Doc. 15) at 6-7.  Plaintiffs argue this reading is supported by language elsewhere in the Surety Bond providing that if Defendant elects to hire a replacement contractor or allow Plaintiffs to hire a replacement contractor, Defendant's obligations are limited to certain categories.  *Id.* at 7.  However, the statement incorporating the Project Contract into the Surety Bond is not limited to purposes of performance of the contract.  Instead, the only limiting language in this clause is that the "Contractor and Surety, jointly and severally, bind themselves … to the Owner for the performance of the Construction Contract."  Plaintiffs provide no authority or basis to impute limiting language to the clause incorporating the contract into the Surety Bond.  The parties could have added language limiting incorporation of the Project Contract to exclude the jury waiver, but they chose not to.  Indeed, in other cases construing identical incorporation clauses, courts have rejected similar limited incorporation arguments.  *See, e.g., Iron Branch Assoc., LP v. Hartford Fire Ins., Co.*, 559 F. Supp. 3d 368, 379-80 (D. Del. 2021) (finding the construction contract was incorporated into the performance bond "without qualification" where performance bond stated: "[Contractor] and [Surety], jointly and severally, bind themselves, their heirs, executors, administrators, successors, and assigns to [Owner] for the performance of the Construction Contract, which is incorporated herein by reference."); *Granite Re, Inc. v. N. Lines Contracting, Inc.*, 478 F. Supp. 3d 772, 778 (D. Minn. 2020) (same, further stating: "The Court emphasizes that the performance bond incorporates the construction contract without limitation. The performance bond does not provide that only some of the terms of the construction contract are incorporated.  Nor does the performance bond provide that the construction contract is incorporated by reference 'except as otherwise provided' or 'except insofar as it is inconsistent

with this performance bond.'"). Similarly, the Surety Bond here does not provide that only some of the terms of the Project Contract are incorporated or that it is incorporated with any exceptions. Therefore, the Court finds the Surety Bond does not include a "limited incorporation" of the Project Contract. *See Macias v. New Mexico Dep't of Labor*, 300 F.R.D. 529, 561 (D.N.M. 2014) (citation omitted) ("[M]atters incorporated by reference or annexed to a contract will be construed as a part of the contract, for the purpose and to the extent indicated. … Matters incorporated into a contract by reference are as much part of the agreement as if they had been set out in the contract verbatim.").

Second, Plaintiffs argue that even if the jury waiver was incorporated by reference into the Surety Bond, the waiver does not apply to this dispute. (Doc. 15) at 7-9. The jury waiver in the Project Contract states: "EACH PARTY WAIVES ITS RESPECTIVE RIGHT TO ANY JURY TRIAL WITH RESPECT TO ANY LITIGATION ARISING UNDER OR IN CONNECTION WITH THIS AGREEMENT." (Doc. 6) at 11. In other cases where a surety sought to apply a jury waiver from a subcontract, courts looked to whether the waiver contained language limiting it to disputes between the original contracting parties. For example, in *Bradshaw* the jury waiver provision of the underlying subcontract was found to not apply to the suit between the owner and surety because the waiver explicitly stated it applied only to disputes between the owner and the contractor. *Engineering & Construction Innovations, Inc. v. Bradshaw Constr. Corp. and Travelers Casualty & Surety Co.*, 2022 WL 3585153, at *5 (D. Minn. 2022) (emphasizing the jury waiver "expressly limits the waiver to disputes between ECI and Bradshaw," so it does not extend to disputes with Travelers). In contrast, in *Anderson*, the court held the subcontract's jury waiver was enforceable in the suit brought by the owner against the surety because the performance bond incorporated the subcontract. *U.S. ex rel. Anderson*

*Excavating Co. v. KiewitPhelps*, 2020 WL 2395220, at *2 (D. Neb. 2020) ("The Subcontract contains an explicit and unambiguous waiver of the right to a jury trial and this provision is enforceable as to claims between Plaintiff and KiewitPhelps.  Further, the Performance Bond expressly and fully incorporates the language of the Subcontract.  Therefore, the terms of the Subcontract, including the jury waiver, apply equally to KiewitPhelps' counterclaim against Universal Surety Company."); *see also Painting Co. v. Walsh/DeMaria Joint Venture III*, 2010 WL 1027424, at *2 (S.D. Ohio 2010) (same, stating: "Plaintiffs' argument fails to acknowledge the breadth of the waiver provision, which provides that plaintiffs have waived their 'right to a trial by jury in any or all disputes or claims arising out of or in relation to' the contracts.").  Here, the jury waiver is not explicitly limited to disputes between Plaintiff and Bridgelink.  Moreover, the waiver is broad as it provides that Plaintiffs waived their right to "*any* jury trial with respect to *any* litigation arising under or *in connection with* this agreement."  (Doc. 6) at 11 (emphasis added).  *See Brown v. Coleman Co.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (holding an arbitration clause stating "all disputes arising under or in connection with this Agreement … will be settled exclusively by arbitration" constitutes "the very definition of a broad arbitration clause").

      Plaintiffs rely on two cases for their argument that jury waiver does not encompass Plaintiff's claims.  *See* (Doc. 15) at 9.  In *Atlas Resources, Inc.*, the court held that a provision waiving jury trial rights did not apply to claims that did not "arise from" or were not "connected to" the underlying agreement containing the waiver.  *Atlas Resources, Inc. v. Liberty Mut. Ins. Co.*, 2010 WL 11552917, at *4 (D.N.M.).  Similarly, in *Barkan*, the court held that a jury waiver in an underlying agreement that was incorporated by reference was not enforceable because the present dispute did not concern the terms of the underlying agreements.  *Barkan v. Dunkin' Donuts, Inc.*, 520 F. Supp. 2d 333, 342 (D.R.I. 2007).  These cases are distinguishable.  First, in

7

*Atlas Resources*, the court did not decline to enforce the jury waiver as to all claims brought by the owner—instead, the court only rejected the jury waiver as to claims that were not connected to the underlying agreement, but it enforced the waiver as to a claim brought "to enforce or defend" the owner's rights under the underlying contract. 2010 WL 11552917, at *4. Here, Plaintiffs' Surety Bond claims arise from and are connected to the Project Contract because they are inherently dependent on the principal's nonperformance of the Project Contract, and Plaintiffs seek to enforce and defend their rights under the underlying contract. Second, the dispute in *Barkan* stemmed from a separate and distinct contract between the plaintiffs and defendant that was entered into well after the underlying agreements that contained the jury waiver. 520 F. Supp. 2d at 342 ("However, as the Plaintiffs point out, the dispute between the parties arises under the Settlement Agreement, a separate and distinct document executed by the parties over a year after the last SDA was drawn up, and Plaintiffs seek to enforce or defend their rights under the underlying contract."). In contrast, the Surety Bond here was executed as a condition of, and at the same time as, the Project Contract. Therefore, the Court finds these cases unpersuasive and holds that the jury waiver in the Project Contract encompasses Plaintiff's claims brought in this lawsuit.

      Third and finally, Plaintiffs contend that Defendant cannot raise Bridgelink's jury waiver because waiver is not a defense to liability. (Doc. 15) at 10-11. Plaintiffs are correct that a jury waiver is not a liability defense, and courts have held that sureties do not have the right to enforce a jury waiver provision in a subcontract that has not been incorporated into the surety bond. *See, e.g.*, *Eng'g & Constr. Innovations, Inc.*, 2022 WL 3585153, at *5 ("[A] surety does not 'stand in the shoes' of its principal with respect to the jury waiver because a jury waiver is not a defense to liability."); *Attard Indus., Inc. v. U.S. Fire Ins., Co.*, 2010 WL 3069799, at *4

(E.D. Va.) (holding a surety did not have the right to enforce a jury waiver in a subcontract because a jury waiver does not constitute a substantive defense to liability, "but merely restricts the fact finding function to the Court").  Defendant, however, does not seek to "stand in the shoes" of Bridgelink to enforce the waiver as a defense to liability.  Instead, Defendant argues it "is entitled to stand upon the jury waiver incorporated into its Bond."  The Court agrees and holds that the jury waiver is enforceable on the separate basis that it was incorporated into the Surety Bond and encompasses the instant litigation.  *C.f. Attard*, 2010 WL 3069799, at *4, n.5 (emphasizing the surety bond did not incorporate the subcontract containing the jury waiver when it denied the surety's attempt to invoke the subcontract's jury waiver).

For the reasons stated above, the Court concludes that Plaintiffs agreed to the jury waiver knowingly and voluntarily, the Surety Bond incorporated the Project Contract in full including the jury waiver, and the jury waiver encompasses Plaintiffs' claims brought against Defendant in this lawsuit.  Therefore, the Court grants Defendant's Motion to Strike Plaintiff's Jury Demand.

**2. Motion to Stay**

Defendant also moves to stay this case pursuant to a clause in the Project Contract requiring "Mandatory Mediation Upon Demand."  (Doc. 6) at 4, 6-7.  This clause provides that if a party "elects to refer the dispute to mediation, the Parties will cooperate in selecting a qualified neutral mediator … and in scheduling the time and place of the mediation as soon as reasonably possible, but in no event later than thirty (30) days after the request for mediation is made." *Id.* at 10.  The clause further requires that the mediation take place within sixty (60) days after the selection of the mediator.  *Id.*

Defendant asks the Court for a "temporary stay of the instant litigation to complete the mediation pursuant to" this mediation clause.  *Id.* at 6-7.  Plaintiffs respond that the Surety Bond

9

does not incorporate the Project Contract's mediation provision for the same reasons it does not incorporate the jury trial waiver. (Doc. 15) at 12, 14. Plaintiffs further argue the mediation provision does not create a mandatory precondition to suit and the Surety Bond provides that disputes between the parties may be resolved in court. *Id.* at 12-13. Finally, Plaintiffs note that Defendant has not formally requested mediation under the Project Contract. *Id.* at 14-15. Defendant argues in reply that the mediation clause was incorporated into the Surety Bond and that a 90-day stay of this case can allow the parties to engage in mediation to narrow or dispose of claims or issues. (Doc. 19) at 9-11.

     The Court finds the mediation clause is incorporated into the Surety Bond for the same reasons the jury waiver is incorporated into the Surety Bond. The mediation clause is not limited to only the parties to the Project Contract, and Plaintiffs offer no reason to exclude it from the Surety Bond other than those the Court considered and rejected above. Nevertheless, the mediation clause does not require the parties to mediate before proceeding with a lawsuit. The parties have participated in a Rule 16 scheduling conference and agreed to a settlement conference before the referral Magistrate Judge, which is set for August 28, 2024. (Docs. 25, 27). Defendant fails to explain why this case should be stayed pending a mediation, especially since nothing precludes the parties from proceeding with mediation regardless of whether or not the case is stayed. Further, it does not appear that Defendant has elected to pursue mediation, thereby triggering the deadlines set forth in the mediation clause. Accordingly, the Court denies Defendant's Motion to Stay without prejudice. The parties may raise this issue again if they elect to pursue mediation and present good cause for a stay.

IT IS THEREFORE ORDERED, for the reasons stated above, that Defendant's Motion to Strike Jury Demand and Motion to Stay This Action Pending Contractually-Required Mediation, (Doc. 6), is GRANTED in part and DENIED in part as follows:

1. The Motion is GRANTED as to Defendant's Motion to Strike Jury Demand, and Plaintiff's jury demand is hereby STRICKEN.

2. The Motion is DENIED without prejudice as to the Motion to Stay Pending Mediation.

IT IS SO ORDERED.

*Kevin Sweazea*
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent